1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| ALL MISSION INDIAN HOUSING AUTHORITY, | CASE NO. 06cv1678 BTM (NLS) |
|---|---|
| Plaintiff, | **ORDER DISMISSING CIVIL ACTION FOR LACK OF JURISDICTION** |
| vs. | |
| BEN MAGANTE, JR. And CATHERINE JEWEL MAGANTE, | |
| Defendants. | |

## I.    BACKGROUND

Plaintiff filed the instant complaint in unlawful detainer to recover possession of land and for damages.  Plaintiff All Mission Indian Housing Authority ("AMIHA"), which describes itself as a federally-sanctioned and federally-funded Indian Housing Authority, seeks to evict Defendants from a home which AMIHA has rented to them because of Defendants' failure to pay rent.  AMIHA is organized under the authority of the federally-recognized Indian tribes which are members of AMIHA.

The Court issued an order to show cause why this case should not be dismissed for lack of subject matter jurisdiction.  Plaintiff's complaint claims that this Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337, and 1362.  All three statutory jurisdictional grants cited by Plaintiff require that the action at issue arise under federal law, that is, they require a "federal question."  28 U.S.C. § 1331 ("all civil actions arising under the

Constitution, laws, or treaties of the United States"); 28 U.S.C. § 1337 ("any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies"); 28 U.S.C. § 1362 ("all civil actions, brought by an Indian tribe or band . . . wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States").

In responding to the Court's order to show cause, Plaintiff has relied upon <u>All Mission Indian Housing Authority v. Silvas</u>, 680 F. Supp. 330 (C.D. Cal. 1987), which found that an eviction by an Indian Housing Authority was a dispute arising under the federal common law and, thus, was properly within the subject matter jurisdiction of the federal courts.[1] Plaintiff argues that both <u>Round Valley Indian Housing Authority v. Hunter</u>, 907 F. Supp. 1343 (N.D. Cal. 1995), and <u>Minnesota Chippewa Tribal Housing Corp. v. Reese</u>, 978 F. Supp. 1258 (D. Minn. 1997), which were cited by the Court in its order to show cause for the proposition that federal courts lacked subject matter jurisdiction over similar actions, are wrongly decided. Plaintiff further argues that the federal common law governing landlord-tenant relations for Indian reservations should be developed from the statutory skeleton put in place by the 1996 passage of the Native American Housing Assistance and Self-Determination Act ("NAHASDA"). Plaintiff claims that NAHASDA provides the essential features of the uniform national law that Congress wishes to be applied in all federally-funded Indian housing matters.

## II.   DISCUSSION

It is undisputed that Plaintiff's complaint in unlawful detainer is a landlord-tenant issue, which is generally a matter of state law. <u>See</u> <u>Hunter</u>, 907 F. Supp. at 1348 (citing <u>Powers v. United States Postal Service</u>, 671 F.2d 1041, 1045 (7th Cir. 1982) ("Federal common law

---

[1] Plaintiff has also submitted an amicus brief filed by the Attorney General on behalf of the U.S. Department of Housing & Urban Development in <u>All Mission Indian Housing Authority v. Castello</u>, Civil No. 81-997-LTL (C.D. Cal.). According to Plaintiff, <u>Castello</u> was a companion case to <u>Silvas</u> and a copy of the amicus brief was supplied to Judge Tashima as an exhibit in <u>Silvas</u>. However, the Court has not considered the brief because it was filed in 1981 and, counsel's assurances notwithstanding, there is no evidence that the Government's position on this issue has not changed in the intervening 26 years.

1   of landlord and tenant does not exist.")).  The fact that Plaintiff's claim to the land at issue is

2   ultimately derived from the federally-defined land rights of its member Indian tribes does not

3   convert the present controversy into one that presents a federal question.  Cf. Oneida Indian

4   Nation v. County of Oneida, 414 U.S. 661, 676 (1974) ("a controversy in respect of lands has

5   never been regarded as presenting a Federal question merely because one of the parties

6   to it has derived his title under an act of Congress") (quoting Shulthis v. McDougal, 255 U.S.

7   561, 570 (1912)).  While "the Federal Government has shown a continuing solicitude for the

8   rights of the Indians in their land," Oneida, 414 U.S. at 684 (Rehnquist, J., concurring), that

9   special interest does not grant jurisdiction to the federal courts over all legal disputes

10   occurring on a federally-recognized Indian reservation.  C.f. Reese, 978 F. Supp. at 1267

11   ("Although the federal government has long had a special relation to the American Indian,

12   there is no jurisdiction in the federal courts to hear a case merely because an Indian . . . is

13   a party to it." (citations omitted).)

14          Similarly, a standard landlord-tenant dispute cannot be said to arise under federal law

15   simply because the landlord is the housing authority for a number of federally-recognized

16   Indian tribes that is charged with utilizing federal funds to provide subsidized housing to tribal

17   members.  The regulatory scheme detailed in NAHASDA, while providing a comprehensive

18   framework for governance of the use of these federal funds, does not provide a federal cause

19   of action for a simple eviction proceeding, even one brought by an entity whose work is

20   authorized by NAHASDA.  The section of NAHASDA quoted by Plaintiff in his response, 25

21   U.S.C. § 4137, does specify certain rules regarding evictions that must be incorporated into

22   all leases, including the tenant's right to examine any relevant documents or records related

23   to the eviction.  However, NAHASDA does not address the issue of where such eviction

24   proceedings should occur.  The Court does not believe that Congress's silence on this

25   subject is evidence of its belief that federal jurisdiction for such actions had already been

26   clearly established, especially since the Hunter decision had already announced that such

27   jurisdiction did not exist by the time of NAHASDA's passage.

28          Congress's failure to specifically provide for jurisdiction in federal courts within

1    NAHASDA cannot simply be attributed to oversight.  Around the time of NAHASDA's
2    passage, the federal government's Indian housing programs included nearly 73,000 housing
3    units for members of the more than 500 federally-recognized Indian tribes.  See U.S.
4    Department of Housing and Urban Development "A Picture of Subsidized Households -
5    1998" (available at http://www.huduser.org/datasets/assthsg/stateddata98/HUD4US3.TXT).
6    The budget for the federally-subsidized Indian housing programs was nearly $750 million in
7    fiscal year 2003.  See Remarks Prepared for Delivery by Secretary Mel Martinez to the
8    National   Congress   of   American   Indians   on   Feb.   24,   2003   (available   at
9    http://www.hud.gov/news/speeches/ncai.cfm).  If Congress had intended that the federal
10   courts exercise jurisdiction over all disputes arising from these housing arrangements and,
11   in this way, act as stewards over the far-reaching programs the Government's substantial
12   investment has generated, it would have indicated as much.

13          After all, Congress is certainly capable of clearly indicating its desire to grant
14   jurisdiction to the federal courts over classes of suits that would not otherwise belong there
15   because they simply involve issues of state law.  For example, in 1989, Congress passed
16   the Financial Institutions Reform, Recovery, and Enforcement Act and established the
17   Resolution Trust Corporation ("RTC"), which was charged with containing, managing, and
18   resolving failed savings associations in the wake of the savings and loan crisis of the 1980s.
19   See Pub. L. No. 101-73, § 101, 103 Stat. 183, 187 (1989).  In order to facilitate the work of
20   the RTC, Congress specifically provided for federal jurisdiction: "Notwithstanding any other
21   provision of law, any civil action, suit, or proceeding to which the [Resolution Trust]
22   Corporation is a party shall be deemed to arise under the laws of the United States, and the
23   United States district courts shall have original jurisdiction over such action, suit, or
24   proceeding."  Id., § 501(l)(1), codified at 12 U.S.C. § 1441a(l)(1).  Thus, actions involving
25   purely state law questions, like routine collection and foreclosure cases, could be brought in,
26   or removed to, federal court if the RTC became involved.  And, although the "already
27   overburdened" federal courts may have questioned the wisdom of exercising jurisdiction over
28   cases that did not involve "any particular federal substantive interest in [their] adjudication,"

the statutory grant of authority was clear.  <u>Resolution Trust Corp. v. Nernberg</u>, 3 F.3d 62, 68 n.3 (3d Cir. 1993).

In the absence of similarly clear statutory direction, the Court does not believe that Congress intended that the federal courts would have jurisdiction over every eviction from an Indian housing unit.  Such evictions could include those brought for repeated violations of miscellaneous lease provisions governing things like noise, or even landscaping, requirements.  In addition, if this Court had jurisdiction to decide landlord-tenant disputes arising from Indian Housing Authority leases, there would be no reason why an Indian tribal member could not bring suit in federal court for performance under such a lease, in addition to any tribal landlord.  Plaintiff's argument supposes that if an Indian Housing Authority tenant, deemed to be defaulting under his lease, should leave on vacation and return to find that his belongings have been moved out of his home and a new family has been moved in, the tenant's suit for repossession would be appropriately brought in federal court.  Likewise, the federal courts would be the appropriate venue for a lessee's suit to be placed in possession of a leased home if his Indian Housing Authority landlord fails to deliver the property at the start of the lease.  In the absence of clear congressional authorization, everyday disputes over lease arrangements on Indian land cannot be thought properly within the jurisdiction of the courts of the United States.

As the Court has determined that there is no statutory grant of jurisdiction to hear the present matter, the only question remaining is whether Plaintiff's complaint asserts a cause of action that is cognizable under federal common law.  Unlike the suit in <u>Oneida</u>, 414 U.S. 661, which was brought upon the Oneida Indians' claim of aboriginal ownership of a vast area of land which had been ceded to the State of New York in 1795, there is no dispute in this case that the land in question is indeed tribal land.  Thus, Plaintiff's complaint does not assert the Indian tribal right of possession, as against all others, that is conferred and protected by federal common law.  The present complaint asserts the AMIHA's right to possession of tribal land as against its own tribes' members, which arises out of a lease arrangement, and nothing more.  <u>See</u> <u>Reese</u>, 978 F. Supp. at 1266 ("Unlike the Oneida

1  Indians, there is no similar assertion by the [tribal housing corporation] that the nature and

2  source of its right to possession is dependent upon Federal law.").

3        The Ninth Circuit, in an opinion which was subsequently withdrawn, and thus is no

4  longer precedential, explained that actions like the one presently before the Court do not

5  "require an interpretation of [a] federal right" and, thus, do not arise under federal law.

6  Owens Valley Indian Housing Authority v. Turner, 185 F.3d 1029 (9th Cir. 1999), withdrawn

7  and reh'g granted, 192 F.3d 1330 (9th Cir. 1999), appeal dismissed as moot, 201 F.3d 444

8  (9th Cir. 1999).  The Turner court cited with approval both Hunter, 907 F. Supp. at 1348, and

9  Reese, 978 F. Supp. at 1266.  See 185 F.3d at 1033.  The court agreed that, while federal

10  common law jurisdiction exists when resolution of a case requires an interpretation of an

11  Indian tribe's federal right of possession, an unlawful detainer suit brought by an Indian

12  Housing Authority merely asserts the rights of a landlord as against its tenant, and does not

13  implicate the Indian tribe's federally protected right to possess and exclude others from its

14  lands.  Id. at 1032-33.  Although the Ninth Circuit's opinion in Owens Valley was withdrawn,

15  the Court finds the reasoning expressed therein wholly persuasive and concludes that federal

16  common law jurisdiction does not exist for the present action.

17        Plaintiff has argued that it will be left without legal recourse if federal jurisdiction does

18  not exist for this action.  This is because federal statutory law precludes bringing this action

19  in state court, see 28 U.S.C. § 1360(b), and no tribal courts exist for the tribes that are

20  members of AMIHA.  However, the lack of a presently-available alternative forum does not

21  provide the constitutional and statutory basis required to provide jurisdiction in federal court.

22  The Supreme Court has expressed the limited nature of the jurisdiction of the federal courts

23  clearly:

24          Federal courts are courts of limited jurisdiction. *They possess only that power
        authorized by Constitution and statute*, which is not to be expanded by

25          judicial decree.  It is to be presumed that a cause lies outside this limited
        jurisdiction, and the burden of establishing the contrary rests upon the party

26          asserting jurisdiction.

27  Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 377 (U.S. 1994)

28  (citations omitted) (emphasis added).  Plaintiff has failed to meet its burden of establishing

this Court's jurisdiction over the present action.

In addition, denying Plaintiff the forum of a federal court will not leave it without any potential for recourse.  The Court agrees with the view presented in the Ninth Circuit's withdrawn <u>Owens Valley</u> opinion:

> In matters of Indian law, federal jurisdiction does not necessarily follow from the absence of state jurisdiction.
>
> . . . .
>
> . . . [P]rotecting tribal sovereignty does not require providing a federal forum whenever state jurisdiction is wanting.  To the contrary, the Supreme Court has found that the interests of tribal self-government and self-determination are generally best served if *tribal courts* preside over disputes involving Indians and arising on Indian land. . . . The interests of tribal sovereignty will be best served by the formation of tribal courts competent to hear such cases.

185 F.3d at 1034;  <u>accord</u> <u>Reese</u>, 978 F. Supp. at 1264 ("[W]e are aware of no impediments, and the Plaintiff draws none to our attention, that would preclude the [Indian] Tribe from imbuing its Tribal Courts with the necessary jurisdiction and procedures to resolve unlawful detainer actions that are brought by a Tribal agency against a member of the Tribe.").  The tribes that have banded together to form the All Mission Indian Housing Authority can, consistent with their own sovereignty, form tribal courts capable of hearing these cases. Thus, a forum can exist to hear these disputes.

## III.    CONCLUSION

Plaintiff in this action seeks a Court order directing the United States Marshal to enter upon an Indian reservation and evict Defendants from their home.  Such eviction would be accomplished by physical force if necessary.  The Court believes that before a court orders Government agents to physically remove citizens from their homes, the authority of the Court to issue such an order should be clearly established.  As the analysis above highlights, clarity as to the propriety of this Court's exercise of jurisdiction is severely lacking.

//

//

//

1        Since the Court has found that the present action does not arise under federal law,

2   the Court lacks jurisdiction over the matter and, accordingly, it must be **DISMISSED**.  The

3   Clerk is directed to enter judgment dismissing this case without prejudice.

4

5   **IT IS SO ORDERED.**

6

7   DATED:  June 12, 2007

8

9                                    Hon. Barry Ted Moskowitz

10                                   United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

06cv1678